**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARRY CRESPO, | ) Civil Action No. 3: 14-cv-0239 |
| Petitioner, | ) |
| | ) United States District Judge |
| v. | ) Kim R. Gibson |
| | ) |
| WILLIAM J. HIGGINS, JR., District | ) |
| Attorney of Bedford County; et al., | ) United States Magistrate Judge |
| Respondents. | ) Cynthia Reed Eddy |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.   RECOMMENDATION

Presently before the Court is a counseled petition for writ of habeas corpus filed on behalf of Barry Crespo, an individual currently incarcerated in the State Correctional Institution – Mahanoy, in Frackvlle, Pennsylvania. For the following reasons, it is respectfully recommended that the petition be denied and a certificate of appealability be denied.

## II.   REPORT

### A.   Relevant and Procedural Background

1.   <u>Trial and Direct Appeal</u>

The Superior Court of Pennsylvania provided the following recitation of the facts underlying Petitioner's case:

> The facts leading to Appellant's conviction involved his engaging in sex acts with a fourteen-year old female. Specifically, Appellant was a youth advocate counselor employed by the Somerset Youth Advocate Program, a non-profit agency providing youth counseling services for Bedford County Children and Youth Services. As part of his employment, Appellant provided counseling services to the victim, N.N. On November 20, 2007, N.N. reported to Pennsylvania State Police that Appellant had sexually assaulted her. When confronted by police, Appellant provided a false alibi, including altered phone records. Appellant also doctored work time sheets, relative to the time admittedly

1

spent with the victim. The time sheets were doctored prior to the allegations coming forward.

At trial, the victim related that on two occasions Appellant placed his finger in her vagina. She also testified that during a separate incident Appellant performed oral sex on her and placed his fingers in her vagina while in his car. The victim further reported that Appellant took her to a Super 8 motel where he engaged in oral sex and digital penetration. Finally, the victim testified to an incident that occurred when Appellant took her to get a tattoo covered.[1] On this occasion, Appellant and the victim stayed at a motel together. Police confirmed that Appellant paid for the motel and traveled together with the victim and met with Appellant's cousin, who was a tattoo artist. The victim provided (sic) that at the motel Appellant had sexual intercourse with her after they smoked marijuana and consumed beer. The following day, Appellant attempted to have sex with the victim again, and also made her manually stimulate him. The victim indicated that Appellant did not penetrate her vagina during this incident.

_____

[FN1] The victim's tattoo was below her waist and consisted of the name of a boy she had previously run away with at the age of thirteen. She admitted telling Appellant that she wanted it covered.

*Commonwealth v. Crespo*, 83 A.3d 814, No. 788 WDA 2012, slip opinion at 1-2 (Pa. Super. Ct. Aug. 28, 2013) (unpublished memorandum) (ECF No. 17-3).

On March 13, 2009, following a two-day trial in the Court of Common Pleas of Bedford County, a jury convicted Crespo of six counts each of corruption of minor and indecent assault, five counts of aggravated indecent assault, and one count each of involuntary deviate sexual intercourse ("IDSI"), unlawful contact with a minor, and statutory sexual assault. On June 18, 2009, Crespo was sentenced to an aggregate sentence of 20 – 40 years of imprisonment. (Sentencing Tr. at 29-36.) On September 25, 2009, the trial court denied Crespo's post-sentence motion.

The Superior Court, by Order dated July 27, 2010, affirmed the judgment of sentence. *Commonwealth v. Crespo*, 6 A.3d 574 (Pa. Super. Ct. 2010). Crespo did not seek further review.

2.     PCRA Proceedings

On January 20, 2011, Crespo filed a counseled petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 − 9546, alleging that Crespo's trial counsel was ineffective for failing to put on a defense, calling character witnesses, and presenting evidence mentioning Crespo's prior criminal record.  Following two days of hearings, on April 26, 2012, the PCRA Court, the Honorable Thomas S. Ling, who was not the trial judge, denied the PCRA petition. *Commonwealth v. Crespo*, 2012 WL 8018030 (Pa. Com. Pl. Apr. 26, 2012) (ECF No. 17-2 at 2 − 7.) Crespo timely filed a counseled appeal from the PCRA court's decision.  On August 28, 2013, the Pennsylvania Superior Court affirmed the PCRA court's decision, *Commonwealth v. Crespo*, 788 WDA 2012, 83 A.3d 814 (Pa. Super. Ct. 2013) (ECF No. 17-3 at 2 − 23), and on March 24, 2014,  the Pennsylvania Supreme Court denied further review. *Commonwealth v. Crespo,*  87 A.3d 814, No. 557 WAL 2011 (Pa. 2014) (table).

On September 8, 2014, Crespo through new counsel, Daniel Silverman, Esquire, filed a second PCRA Petition in which he alleged, *inter alia*, that his counsel had recently uncovered information that one of his trial attorneys, Lance Marshall, Esquire, was the subject of criminal and disciplinary investigations at and before the time of Crespo's 2009 trial. Crespo argued that Marshall was operating under a conflict of interest that adversely affected his stewardship of Crespo's case.  Crespo acknowledged that his petition was outside the PCRA's one-year time-bar, but argued that the petition was timely under the newly-discovered evidence and the governmental interference exceptions to the one-year time bar.

On October 9, 2014, the PCRA court found that it lacked jurisdiction and dismissed the second petition finding that Crespo had failed to meet any timeliness exceptions.  (ECF No. 17-4.) On June 24, 2015, the Pennsylvania Superior Court affirmed the denial of Crespo's second

petition on the basis of untimeliness. *Commonwealth v. Crespo,* No. 1827 WDA 2014, 122 A.3d 1144 (Pa. Super. Ct. June 24, 2015). (ECF No. 17-5 at 2-7.)

### 3.    Federal Habeas Case

On September 16, 2014, approximately a week after Crespo had filed his second PCRA petition, he filed a counseled Writ of Habeas Corpus Petition in the United States District Court for the Eastern District of Pennsylvania. The Petition was transferred to this Court on October 31, 2014. Crespo's federal petition was stayed while he pursued the unexhausted conflict-of-interest claims in his second PCRA petition. On July 7, 2015, Crespo filed a motion to reopen the instant proceedings, which motion was granted on July 8, 2015. Respondents filed a Response on October 16, 2015 (ECF No. 17), to which Crespo filed a Reply on October 18, 2015. (ECF No. 18). The matter is ripe for disposition.

## B.    Standard of Review

### 1.    28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Crespo's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302-309-10 (3d Cir. 2010).

As codified at 28 U.S.C. § 2254(d), AEDPA provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Our Court of Appeals has made clear that "the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." *Hassine v. Zimmerman,* 160 F.3d 941, 954 (3d Cir. 1998). Put simply, "habeas proceedings are not the appropriate forum for [a prisoner] to pursue claims of error at the PCRA proceeding . . . . It is the original trial that is the 'main event' for habeas purposes." *Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004).

Importantly, regardless of whether a state court has adjudicated a claim on the merits so as to invoke review under the standard set forth in § 2254(d), a federal habeas court must presume all of the state court's factual findings are correct unless the presumption is rebutted by clear and convincing evidence. *See., e.g., Palmer v. Hendricks*, 592 F.3d 386, 392 (3d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)). *See also Weeks v. Snyder*, 219 F.3d 245, 259 (3d Cir. 2000) (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983), for the proposition that habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court).

5

2.    Exhaustion and Procedural Default

Before the Court can address the merits of Crespo's claims, it is necessary to examine whether the petition fulfills the applicable procedural requirements as set forth in AEDPA.

The Court must determine whether Crespo's claims have been adequately exhausted in the state courts as required by 28 U.S.C. § 2254(b) and (c).  It is well settled that, as a matter of comity, the state should be provided with the first opportunity to consider the claims of constitutional violations and to correct any errors committed in its courts.  *O'Sullivan v. Boerckel,* 526 U.S. 838 (1999); *Coleman v. Thompson,* 501 U.S. 722, 731 (1991); *Rose v. Lundy*, 455 U.S. 509, 517 (1982).   The burden is on the habeas petitioner to establish that he has presented his federal constitutional claims (both facts and legal theory) to all levels of the state judicial system.  *See Gattis v. Snyder*, 278 F.3d 222, 231 (3d Cir. 2002) (quoting *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)).   In Pennsylvania, this requirement generally means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then to the Superior Court either on direct or PCRA appeal.  *See, e.g., Lambert,* 387 F.3d at 233-34.[1]   The petitioner retains the burden of showing that the claims he is raising in federal court are the "substantial equivalent" of those presented in state court.  *O'Sullivan,* 526 U.S. at 845; see *Halloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) ("'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'")).   The habeas petitioner bears the burden of

---

[1]    Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address the claim.  *Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007).

proving exhaustion of all state remedies. *Boyd v. Walmart*, 579 F.3d 330, 367 (3d Cir. 2009) (quoting *Lambert*, 134 F.3d at 513)).

A federal court may excuse the exhaustion requirement if it would be futile for the petitioner to seek relief in the state court system. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995); 28 U.S.C. 2254(b)(1)(B)(i)-(ii). The PCRA is the sole means for obtaining collateral relief from convictions in Pennsylvania; thus, exhaustion is deemed futile if the PCRA's statute of limitations has expired. *See Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir. 2001); *Lines v. Larkins,* 208 F.3d 153, 164 n.17 (3d Cir. 2000); *see also* 42 Pa. Cons. Stat. § 9542. This Court can deny an unexhausted claim on the merits only if the claim is without merit.

A federal court may not consider a procedurally defaulted claim unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The doctrine applies whether the default occurred at trial, on appeal, or during collateral proceedings, *Edward v. Carpenter*, 529 U.S. 446, 451 (2000), and applies only when a state procedural rule is consistently and regularly applied. *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Johnson v. Mississippi*, 486 U.S. 578, 588–89 (1988)).

To demonstrate cause, the petitioner must show that "'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Fogg v. Phelps,* 414 F. App'x 420, 429-30 (3d Cir. 2011) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). "Examples of external impediments which have been found to constitute cause in the procedural default context include 'interference by officials,' 'a showing that the factual or legal

basis for a claim was not reasonably available to counsel,' and 'ineffective assistance of counsel.''' *See United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005) (quoting *Wise v. Fulcomer,* 958 F.2d 30, 34 n.9 (3d Cir. 1992)). To show prejudice, a petitioner must show more than a potential for prejudice, but rather that the error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 .S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). If a petitioner fails to satisfy both prongs, the procedural default may not be excused

To demonstrate a fundamental miscarriage of justice, a petitioner must show that a "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). "[A]ctual innocence" is satisfied if petitioner can show that, in light of new reliable evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt *Id*.; *Houck*, 625 F.3d at 93.

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. *See, e.g.*, *Wainwright v. Sykes*, 433 U.S. 72 (1977).

With these principles in mind, each of Crespo's claims will be examined to determine whether it was presented to all of the state courts and, if so, whether the claim was decided on the merits or on the basis of an independent and adequate state procedural rule.

C.     **Discussion of Petitioner's Claims**

Crespo sets forth six claims in his habeas petition. Of these claims, only Claims I and II, the "conflict claims," were presented to the PCRA trial and appellate courts. The other four

claims were never presented to any state court.[2]  Crespo, relying on *Martinez v. Ryan*, -- U.S. ---,
132 S. Ct. 1309 (2012), contends that it was the ineffectiveness of his counsel that caused the
default on these issues.

      1.    Conflict of Interest Claims[3](Claims I and II)

      Claims I and II are related and will be discussed together.  In Claim I, Crespo argues that
his counsel at trial and on direct appeal, Lance Marshall, Esquire, labored under a conflict of
interest that adversely affected his performance in violation of the Sixth Amendment to the
United States Constitution.[4]  Relatedly, in Claim II, Crespo argues that the Commonwealth knew
of Marshall's conflict and failed to disclose the conflict which interfered with Crespo's right to
counsel and deprived him of due process in violation of the Sixth and Fourteenth Amendments to
the United States Constitution.

      On September 8, 2014, Crespo, through his current privately retained counsel, filed a
second PCRA Petition, arguing that his new habeas counsel had recently uncovered information
which established that Marshall had a conflict of interest.  Both the PCRA trial and appellate
courts refused to address Crespo's conflict claims on the merits, finding that the claims were

---

[2]      Respondents argue that Claim V was presented in state court.  That claim will be
discussed *infra*.

[3]      The original state court records were received by the Court on December 2, 2015.  The
appellate briefs filed with the Superior Court addressing the conflict claims were not contained in
the record. The Court, however, has independently accessed these briefs via WESTLAW, to wit:
Crespo's brief filed December 22, 2014 (2014 WL 872853); the Commonwealth's Brief filed
March 30, 2015 (2015 WL 1893897); and Crespo's Reply Brief filed April 8, 2015 (2015 WL
2343169).

[4]      Specifically, Crespo argues that Attorney Marshall was the subject of criminal and
disciplinary investigations at and before the time of Crespo's 2009 trial and that Attorney
Marshall's "interest in protecting himself from criminal prosecution and disciplinary action"
created a conflict of interest that adversely affected his stewardship of the case.

untimely and without exception to be heard in a second PCRA petition.[5] Thus, the claim is procedurally defaulted.

As discussed *supra,* the doctrine of procedural default precludes a federal habeas court from "review[ing] a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Bronshtein v. Horn*, 404 F.3d 700, 700 (3d Cir. 2005) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A state's procedural rules are entitled to deference by federal courts, and a violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. *Coleman*, 501 U.S. at 750.

The United States Supreme Court has recognized a "limited category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemma*, 534 U.S. 363 (2002). The Court of Appeals for the Third Circuit has relied on the "exorbitant application" exception articulated in *Lee* to excuse procedural defaults in only three cases: *Evans v. Secretary, Dep't of Corrections*, 645 F.3d 650 (3d Cir.), *cert. denied,* 132 S.Ct. 349 (2011); *Rolan v. Coleman*, 680 F.3d 311 (3d Cir.), *cert. denied*, 133 S.Ct. 669 (2012); and *Shotts v. Wetzel,* 724 F.3d 364, 371-72 (3d Cir. 2013), *cert. denied*, 134 S.Ct 1340 (2014).

Relying on *Lee,* Crespo argues that the Superior Court's "inflexible interpretation" of the timeliness exceptions provided in 42 Pa.C.S. § 9545 was an "exorbitant application" of the timeliness rule rendering it inadequate to bar consideration of his federal habeas conflict of interest claims. The Superior Court found unavailing Crespo's argument that "he could not by

---

[5]     Pursuant to 42 Pa.C.S.A. § 9545(b), a PCRA petition shall be filed within one year of the date the judgment becomes final, subject to three limited exceptions, none of which the Superior Court found applicable. The time requirement is mandatory and jurisdictional in nature.

the exercise of due diligence" have learned of Marshall's alleged conflict any earlier, especially when he was relying on facts that were public and available to the general public. Superior Court Memorandum, 6/24/2015 at 4-6 (ECF No. 14-2). Nothing about the state court's application of the timeliness rule appears to be so exorbitant or extraordinary as to render the state rule inadequate. *See Lee,* 534 U.S. at 376 (quoting *James v. Kentucky,* 466 U.S. 341, 348 (1984) ("Ordinarily, a violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim."). The Court finds that this is not one of the "exceptional cases" in which the exorbitant application rules. Thus, the "independent and adequate" rule precludes federal review of these claims.[6]

The question then becomes whether Crespo can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim would result in a fundamental miscarriage of justice.[7] See *Coleman*, 501 U.S. at 750. The Court finds that Crespo cannot meet this burden.

Crespo argues that he has established "cause" because the delay in his investigation was due to the Bedford County District Attorney's concealment of the fact that "its law enforcement

---

[6]     Respondents did not argue that the independent and adequate rule precludes federal review. Petitioner has the opportunity to address the Court's recommendation in any objections he may file to this Report and Recommendation.

[7]     Crespo cannot establish that a miscarriage of justice would result if his claims are not reviewed. The miscarriage of justice exception is extremely narrow, available only in "extraordinary" cases in which the petitioner has demonstrated that he is actually innocent of the crime. *Schlup*, 513 U.S. at 321; *House v. Bell*, 126 S.Ct. 2064, 2077 (2006). ("[I]t bears repeating that the *Schlup* standard is demanding and permits review only in the 'extraordinary case.' "). This narrow exception is concerned with "actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992); *Hull v. Freeman,* 991 F.2d 86, 91, n.3 (explaining that, where petitioner has no colorable claim that he did not commit the crime, the miscarriage of justice exception cannot be satisfied). Given that Petitioner has not come forward with any new evidence demonstrating his actual innocence, he cannot meet this exacting standard.

arm was actively investigating Marshall." Pet's Memorandum at 41. (ECF No. 14.) Crespo argues nothing more than speculation and conjecture in support of his argument that the District Attorney's office knew, much less concealed, information that the state Attorney General's office and the Centre County District Attorney's office were investigating Marshall. While he contends that the "Commonwealth had control of the information necessary to ensure conflict-free representation," he offers no evidence to support this argument. He has failed to explain the manner in which the District Attorney's Office of Bedford County concealed or otherwise interfered with the presentation of this claim, especially when the record reflects that the documentation upon which Crespo now relies was a matter of public record as early as 2009.[8] Habeas relief cannot be granted on speculation and conjecture. Crespo has failed to establish the "cause" in "cause and prejudice."

In the alternative, Crespo argues that his PCRA counsel was ineffective for failing to raise the conflict of interest claims. Crespo, relying on *Martinez v. Ryan*, -- U.S. ---, 132 S. Ct. 1309 (2012), contends that it was the ineffectiveness of his PCRA counsel that caused the default on these claims.[9] For claims of ineffective assistance of counsel not preserved and thus defaulted

---

[8] In fact, Crespo concedes that he "presently has no basis to allege that the Bedford County District Attorney's Office had actual notice that Marshall was being investigated for serious crimes at the same time he was representing petitioner." Pet's Reply at 8 (ECF No. 18 at 8).

[9] In his Reply, Crespo states that "Respondents do not assert the defense of procedural default as to any claim. . . and [t]his Court therefore should consider that defense forfeited under the authority of *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). Reply at 2 (ECF No. 18). Crespo fails to recognize, however, that in his original petition filed in this court, he conceded that his claims were procedurally defaulted and addressed this issue head-on by arguing that *Martinez* allows him to overcome the default. *See* Pet. at 21 (ECF No. 1): "All of the federal constitutional claims presented here were not preserved properly in state court. Where the failure to preserve these federal constitutional claims was due to the ineffective assistance of PCRA counsel, petitioner invokes the rule of *Martinez v. Ryan* . . . . In each claim presented here, petitioner shall demonstrate why *Martinez* permits him to assert the claim." In their

12

on collateral review, *Martinez* provides a possible means for establishing cause to excuse the default. *Martinez*, 132 S. Ct. at 1315. As stated by Justice Kennedy in the majority opinion:

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding,[10] a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*. To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Id*. at 1318-19 (emphasis added).

A petitioner cannot be excused from default if the underlying ineffectiveness claim is insubstantial, lacks merit or factual support, or the attorney on collateral review did not perform below constitutional standards. *Id*. at 1319.

The clearly established federal law with respect to a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires (a) that counsel's performance fall below an objective standard of reasonableness, and also (b) that the petitioner suffer prejudice as a result of counsel's error. The Pennsylvania standard for ineffective assistance of counsel is identical to the federal standard. *Boyd v. Waymart*, 579 F.3d 330, 334 (3d Cir. 2009).

As to the first *Strickland* prong, there is a strong presumption that counsel's conduct was reasonable. *Strickland*, 466 U.S. at 689. As to the second prong, the United States Supreme

---

Response, Respondents first discuss the merits, or lack thereof, of each claim, and then, responding to Crespo's *Martinez* argument, argue why the claim fails under the *Martinez* exception.

[10] Pennsylvania requires claims of ineffective assistance of trial counsel to be raised in an initial-review collateral proceeding like a PCRA proceeding. *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (claims of ineffective counsel should be raised on collateral review).

Court held that "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Court will now discuss Crespo's conflict of interest claims under this framework.

The Sixth Amendment guarantees a criminal defendant counsel's "undivided loyalty." *Government of Virgin Islands v. Zepp,* 748 F.2d 125, 131 (3d Cir. 1984). In *Mickens v. Taylor*, the United States Supreme Court defined an "actual conflict" as "precisely a conflict that affected counsel's performance – as opposed to a mere theoretical division of loyalties." 535 U.S. 162, 171 (2002). Although *Mickens* concerned a conflict arising out of trial counsel's prior representation of the victim, the Court of Appeals for the Third Circuit has applied its reasoning to other conflict of interest claims. *See Chester v. Comm'r of Pa. Dep't of Corr*., 598 F. App'x 94 (3d Cir. 2015) (applying *Mickens* to a case in which petitioner alleged his attorney's pending DUI charge in the same court in which petitioner was tried created an actual conflict requiring a new trial).[11]

The majority of cases relied upon by Crespo present significant factual distinctions from the case at bar. The cases cited by Crespo involve obvious connections between the conflict and the questionable trial tactics. For example, a number of the cases involve a lawyer who was being prosecuted or investigated by the <u>same</u> prosecutor's office that was prosecuting the client. Here, in contrast, Attorney Marshall was not under indictment nor was he being prosecuted or

---

[11]    The Petitioner in *Chester* was represented by Daniel L. Silverman, Esquire, the same attorney who represents Crespo in this matter. In *Chester*, the conflict of interest claims were found not to be procedurally defaulted because the PCRA statute of limitations was not firmly established nor regularly applied at the time Chester's default occurred on January 16, 1997. As the appellate court noted, "Pennsylvania's PCRA statute of limitations was not firmly established nor regularly applied until November 23, 1998, at the earliest, when *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), announced that the "relaxed waiver" doctrine no longer applied in capital post-conviction appeals, was decided. *Chester v. Comm'n of Penn. Dept. of Corrections,* 598 F. App'x 94 at * 99 n.3 (Jan. 29, 2015).

being investigated by the Bedford County District Attorney's office.  Rather, the record reflects that Marshall was under investigation by the state Attorney General's Office and the Centre County District Attorney's Office.

Further, the record belies Crespo's arguments that Attorney Marshall's  "legal troubles amounted to such a distraction that no attorney in his position could have discharged his duty to zealously represent petitioner." The record reflects that Marshall explained to Crespo that he had performed the following work:

> prepared, filed, and argued a motion for bail reduction; attended sentencing; researched, investigated and litigated post-sentence motions.  As part of these duties, [Marshall] traveled to Bedford County on four different occasions, including, once to see [Crespo] in the prison on March 18; to attend the bail hearing on April 13, 2009; to attend the sentencing hearing on June 18, 2009, and to attend your post-sentence Motion hearing on September 18, 2009.  Each of these matters included preparing and filing a motion, as well as the factual and legal investigation to argue each of these motions.

Second PCRA Petition, Exh. 1, Memorandum to Barry L. Crespo from Lance T. Marshall, dated October 12, 2009. Likewise, Crespo's arguments that Marshall wanted to keep a "low profile" from the Disciplinary Board and desired to "avoid angering the District Attorney of Bedford County or the presiding judge" or any of the officials they had connections to, is unsupported by the record.  Crespo has made no showing or provided any record support for his assertion that Marshall's performance was affected by his desire to curry favor with the District Attorney or that he wanted to keep a "low profile" from the Disciplinary Board.  Rather, the record evidence reflects that Marshall vigorously advocated on behalf of his client. Crespo has not shown that his counsel's performance was unreasonable or that Crespo acted under a conflict of interest.

As discussed *supra*, Crespo similarly has no evidence upon which to base a claim that the Bedford County District Attorney Office had actual notice of or concealed any information relating to Marshall's own legal issues.

Crespo has failed to establish the "cause" in "cause and prejudice." For these reasons, the Court finds that Crespo has not shown that his claim of ineffectiveness of counsel has substantial merit under either *Martinez* or *Strickland*. The Court recommends that Claims I and II, therefore, be denied.

2.     Ineffective Assistance of Counsel Claims (Claims III – VI, Inclusive)

Crespo raises ineffective assistance of counsel claims based on four alleged shortcomings in trial counsel's representation. Crespo claims that his trial counsel, Philip M. Masorti and Lance Marshall, were ineffective because they failed to advise both Crespo and his wife of their respective privileges to preclude his wife, Sheri Crespo, from testifying as a Commonwealth witness (Claim III); (2) his sentencing attorney, Lance Marshall, failed to object at sentencing to the manner in which the sentencing court calculated the applicable sentencing ranges (Claim IV); (3) his trial attorney, Masorti, failed to deliver on promises he made in his opening statement; (Claim V); and (4) his trial attorney, Masorti, failed to object to the trial court's instruction on the victim's failure to make a prompt complaint (Claim VI). Crespo bears the burden of proving each of these claims. *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).

As noted *supra,* none of these claims, with perhaps the exception of Claim V, has been presented to the state courts. Crespo, again relying on *Martinez,* contends that it was the ineffectiveness of PCRA counsel that caused the default on these claims. The court will discuss each of Crespo's claims under the *Martinez / Strickland* framework.

*a. Claim Three*[12]

In his third claim for habeas relief, Crespo claims that his trial counsel failed to advise both him and his wife of their absolute right under state law to refuse to reveal confidential communications between spouses. Crespo addresses his counsel's alleged ineffectiveness within the confines of Pennsylvania's spousal confidential communication privilege, 42 Pa.C.S. § 5914, which provides:

> Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914. Communications between spouses in the presence of others are not privileged. In light of Pennsylvania law, trial counsel should have advised Petitioner and his wife of their right absolute right under state law to refuse to reveal confidential communications between them. Thus, counsel's performance was inadequate.

Turning then to the prejudice prong of the ineffectiveness standard, a petitioner must show that there is reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Furthermore, in considering whether a petitioner suffered prejudice, "the effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors

---

[12]     In support of this claim, Petitioner attaches to his petition the "Affidavit and Declaration of Sheri Crespo," which reflects that "at no time did either Mr. Masorti or Lance Marshall ever explain to me that I had the right to refuse to testify as a Commonwealth witness by invoking my rights as the defendant's wife" (ECF 1-1, Exh. C), and the "Affidavit and Declaration of Lance T. Marshall, Esquire," which offers nothing in support of this issue.  (ECF 1-1, Exh. J).

than one with overwhelming record support.'" *Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006) (quoting *United States v. Gray,* 878 F.2d 702, 710–11 (3d Cir. 1989)).

After a review of all the testimony adduced during the trial, the court concludes that, because Crespo's conviction is well-supported by the record, Crespo was not prejudiced by his wife's testimony. Further, she never revealed to the jury any incriminating statements or commentary to the jury that was not presented to the jury through the testimony of other witnesses. In fact, Mrs. Crespo's testimony cast doubt on the Commonwealth's case when she testified, *inter alia*, that she was "upset with CYS and YAP" for "giving my husband [the victim]", that CYS sought him out to take on N.N. as a client, rather than him seeking N.N. as a client; that she had concerns that N.N. was "manipulative," and that she "had a really bad feeling in [her] stomach that N.N. was going to pull something like this." Trial Tr., Day 1, at 319-20. She also reported that at one point, Trooper Snyder, the investigating officer, told her that, "it appears that Ms. N.N. is lying." *Id*. at 322. Mrs. Crespo testified that "once [her husband] told me the truth I believed him because my husband is a good man." (*Id*.)

Because the totality of the evidence supports the conviction, Crespo has failed to establish that, but for his counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Because his ineffective assistance claim lacks merit Crespo has failed to meet the requirements of *Martinez* and *Strickland* to overcome the procedural default. For these reasons, it is recommended that Claim III be dismissed.

### b. Claim IV

In his fourth claim for federal habeas relief, Crespo claims that he was prejudiced by his attorney's failure at sentencing to object to the sentencing court's starting point of the applicable

sentencing range.[13] Petitioner's counsel at sentencing, Lance Marshall, argued for a ten (10) year mandatory sentence on the ISDI conviction, with all other sentences to run concurrently. (Sent. Tr. at 17). The Commonwealth argued for an aggregate sentence of thirty-eight (38) to eighty (80) years.

Before turning to the merits of this claim, the Court observes that this is not the first time Petitioner has challenged his sentence. In his post-sentence motion, Petitioner challenged the imposition of the statutory mandatory minimum sentence on his ISDI conviction on Equal Protection grounds and argued that the remainder of his sentence was excessively harsh and constituted too severe of a punishment. (Post-Sentence Motion, filed 6/26/2009). After conducting a hearing, the trial court rejected this argument explaining that (1) it found no merit to Crespo's Equal Protection violation argument and (2) the sentence imposed was neither excessively harsh nor constituted too severe of a punishment. Order of Court, 10/25/2009. Crespo again raised the issue on direct appeal. Both the trial court in its 1925(a) Opinion and the Superior Court on direct review found the claim to be without merit.

In his instant federal habeas petition, Crespo again challenges his sentence, although now the issued is framed as an ineffective assistance of counsel claim for failing to challenge the trial court's sentencing scheme. Petitioner does not contend that the sentence meted out to him was illegal; but rather that trial counsel failed to object at the sentencing hearing "when the Court failed to comply with established state law in calculating the applicable sentencing ranges."

The Court finds that this claim is without merit. First, a careful review of the sentencing hearing transcript reveals that the trial court acknowledged the statutory mandatory minimum on

---

[13]     In Claim I, Petitioner argues that counsel's failure to object is further evidence of Marshall's conflict. In Claim IV, Petitioner argues a stand alone ineffective assistance of counsel claim under *Strickland.*

the IDSI conviction, and then proceeded to determine the guideline ranges for all counts of conviction, including the IDSI conviction:

> [T]he IDSI would be a twelve (12) and a five.  It would be eighty-four (84) months to hundred and two (102) months plus or minus twelve (12).  The Unlawful Conduct . . . would be a twelve (12) and a five.  It would be eighty-four (84) months to hundred and two (102) months plus or minus twelve (12).  The Sexual Assault is a seven (7) and a five (5), twenty-four (24) to thirty (30), plus or minus six (6).

> The Aggravated Indecent Assault is a ten (10) and a five (5), sixty (60) to seventy-two (72), plus or minus twelve (12).  The Corruption since it's sexually related is  a five (5) and a five (5), twelve (12) to 18, plus or minus (3).  And the Indecent Assault would be a four (4), and a five (5), nine (9) to sixteen (16), plus or minus three (3).

Sentencing Tr. at 15-16.    The sentencing court, and all counsel, recognized that the IDSI conviction carried a mandatory minimum sentence of ten (10) years.  *See* Sentencing Tr. at 5 ("Now is there any objection that the IDSI would carry the ten-year mandatory?")  Additionally, the transcript reflects that the sentencing court was well aware of the discretionary aspects of the sentence for the additional convictions.

Before imposing the sentence, the court acknowledged that he had received and reviewed the Petitioner's brief, the pre-sentence investigation report, and the letters that had been submitted on behalf of Crespo.  (*Id*. at 27.)  The court explained while it did not feel it was appropriate to sentence Crespo to only the ten-year mandatory minimum sentence, with the other sentences to run concurrently, he also was unwilling "to run all sentences consecutive . . . in recognition of some of the good points that have been brought out." (*Id*. at 28.)

Nothing in the sentencing transcript or Crespo's argument demonstrates to this Court that the sentencing court erred in its method of calculating the applicable sentencing ranges.  Thus,

there was no ground for trial counsel to object.   Absent some merit to the issue, PCRA counsel cannot be ineffective for neglecting to raise the issue on collateral review.

However, even assuming *arguendo* that counsel's failure to object was unreasonable, Crespo has not demonstrated that he suffered any prejudice.   By his own admission, there is no reason that the sentencing court "could not have ended up with the same 20-40 year sentence . . . He clearly had the right to impose consecutive Guidelines sentences to reach the same number."   Because his ineffective assistance claim lacks merit, Crespo has failed to meet the requirements of *Martinez* and *Strickland* to overcome the procedural default.     For these reasons, it is recommended that Claim IV  be dismissed.

*c. Claim V*

In his fifth claim for federal habeas relief, Crespo claims that his attorney failed to deliver on promises he made in his opening statement to present the testimony of petitioner and several fact and character witnesses.   Respondents argue that this claim was already litigated in state court.

In his first PCRA petition, Crespo alleged his trial counsel was ineffective in (1) failing to put on a defense, specifically failing to call (i) Crespo, (ii) character testimony; and (iii) key defense witnesses; and (2) establishing his client had a prior criminal history.   After holding two days of hearing, the PCRA trial court, who was not the trial judge in this matter, denied Crespo's PCRA petition finding:

> In this case, the issue is not a lack of trial preparation.   Fact and character witnesses had been located and summoned to court.   The case had been discussed between the Defendant and his attorney.   The record shows trial counsel had a good knowledge of the facts of the case, and had acted proactively on the part of his client.   Rather the claims raised regard questions of trial strategy.   Our courts have held that where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable.   *Com. v. Basamore*,

560 Pa. 258 (2000). Nor can a claim of ineffectiveness generally succeed through comparing by hindsight, the trial strategy employed with alternative not pursued. *Com. v. Williams*, 557 Pa. 207 (1999).

PCRA Opinion, 4/26/2012 at 4. The PCRA court further found that Crespo's testimony during the PCRA hearing was "evasive, non-responsive, and contradictory." (*Id*. at 5.) "To the extent the trial counsel's testimony and the Defendant's testimony cannot be reconciled; we accept trial counsel's testimony.[14] The decision to stand on the presumption of innocence in this case was a valid trial strategy." (*Id*.)

On PCRA appeal, Crespo raised these same issues. The Superior Court's majority opinion characterized the argument as "[i]n essence, Appellant's first argument is that trial counsel was ineffective for failing to produce evidence that he promised during his opening statement." Superior Court Memorandum, 8/28/2013 at 6 (emphasis added). (ECF No. 17-3 at 7). The Superior Court went into great detail addressing each of the "promises" that Petitioner's trial counsel failed to produce. After an extensive analysis, the appellate court rejected each of Crespo's claims and found that while the claim is one of "arguable merit," Crespo had not established he suffered prejudice as a result of his trial counsel failing to call these witnesses.[15]

Respondent argues that this claim was properly preserved and rejected by the Pennsylvania state courts. Not surprisingly, Crespo disagrees. He characterizes his arguments in the original PCRA proceedings as "a claim alleging ineffective assistance for failing to present

---

[14]    As explained *supra*, federal habeas review does not permit a federal court to redetermine the credibility of witnesses whose demeanor has been observed by the state court.

[15]    In a concurring memorandum, Judge Donohue, while stating that she concurred with the majority's analysis to affirm the PCRA court's order dismissing the petition, opined that she was "deeply troubled by counsel's performance in this case." However, she further stated, "I observe that Crespo did not specifically preserve an argument that counsel was ineffective for failing to deliver on the promises of his opening statement. Thus, this is not an appropriate case to analyze this issue more thoroughly." Concurring Opinion, at 4. (ECF No. 17-3 at 31.)

witnesses and put on an affirmative defense. No claim was ever raised alleging ineffective assistance for failing to deliver on promises made in the opening statement. They are separate claims." Reply at 12 (ECF No. 18.)

The Court finds that this is a very close call. But in an abundance of caution, and especially in light of the language in Judge Donohue's concurring opinion, the Court will proceed to analyze the claim *de novo*, under the presumption that it is a new claim that was not raised by PCRA counsel on collateral review.

The Court has reviewed the transcript of counsel's opening remarks and the transcript of counsel's testimony during the post-conviction hearing. In his opening statement, counsel promised various exculpatory evidence, but at the close of the Commonwealth's case, the defense elected not to present evidence but rather to rely on the presumption of innocence.

Trial counsel testified during the PCRA hearing that his original trial strategy was a three-prong defense: (1) attack the Commonwealth's witnesses and impeach the victim; (2) present the defendant's testimony; and (3) present some character evidence. During the victim's cross examination, she conceded that she had lied under oath when she told the jury she had deleted her sent text messages because the in-box on her phone was full. (Trial Tr., Day 1 at 135-36.) At the PCRA hearing, trial counsel explained that the unexpected developments of the victim's admission of lying warranted changes in the previously announced trial strategy:

> What I did in my opening statement was I told the jury everybody would be testifying. And then to, and then it was make an erratical, unexpected departure from that trial strategy based on her statement she lied. So my radical departure was I was trying to convince the jury was that we're now not calling anybody. we're not going to dignify these falsehoods, this stuff that you've heard so far. We're not going to dignify this with the defendants. I don't think at the time I could have told the jury initially we were going to call all of these people and then just parcel the fact witnesses out, and parcel Mr. Crespo out, and then just call the character witnesses because they were immunized from getting in the record.

> That wasn't how it went down. It went down like: This is, all or nothing. . . . I thought I could reconcile telling the jury I've changed by plan. And the reason I changed my plan is it was completely unforeseeable that this young lady would look at you and say she's lying. . . . I didn't think I could have said, I've changed my plan. You're not going to hear from good character and not Barry or the fact witnesses. I didn't - - -that just wasn't - - - it was all or nothing when we changed the attitude was: They didn't prove it.

Transcript of PCRA Hearing, 9/16/2011, at 31.

The record reflects that trial counsel explicitly explained to the jury during his closing argument why he changed strategies:

> And it was my decision to offer no evidence. You can infer probably pretty reasonably that we had something to present, if not a massive amount of information to present. But we presented nothing. And that was my decision of course for Mr. Crespo. And the reason why I opted not to present any evidence, number one, it's late. However, this trial could go to Saturday or Sunday. But more importantly because in reviewing the evidence last evening when I couldn't sleep, and this morning it became very clear to me that the Commonwealth was not even close by any legal standard of proving their case beyond a reasonable doubt. And at least it became clear to me. And that's my argument to you.
>
> . . .
>
> The difficulty becomes however that despite the efforts of the Commonwealth and the District Attorney Bill Higgins is not a magician. He cannot overcome the fact that N.N. took the stand and lied to you. She lied to you in open court, under oath, and we abruptly stopped the proceedings and get her out of here because she lied under oath. But she lied to the police. She lied to Children and Youth Services. She had a reputation for lying. And she lied under oath to you.

Trial Tr., Day 2, at 132 – 35.

It appears that defense counsel's mid-trial decision was a reaction to unfolding events. However, the court does not have to determine whether this decision was unreasonable because Crespo has not carried his burden to show that he was prejudiced by counsel's change of trial

strategy.[16]    During his PCRA testimony, trial counsel provided a number of valid and credible

reasons for the mid-trial change of trial strategy.  Significantly, there is nothing in the record to

suggest a different outcome would have occurred if the original trial strategy been pursued.[17] As

counsel stated in his closing, the Commonwealth "proved everything that we've already

stipulated to. . . . And if you don't believe her testimony, not guilty. If you do not believe her, not

guilty.  There's nothing else that corroborates her story." (Trial T., Day 2 at 124, 135.)

   The Court finds that Crespo has not demonstrated a reasonable probability that, but for

his attorney's alleged error, the result of the proceeding would have been different.  *Strickland,*

466 U.S. at 694.  Because his ineffective assistance claim lacks merits, Crespo has failed to meet

the requirements of *Martinez* and *Strickland* to overcome the procedural default.    For these

reasons, it is recommended that Claim V be dismissed.

---

[16]    As explained by the Supreme Court of the United States, the order of analysis of the two *Strickland* prongs – performance and prejudice – is at the discretion of the district court. *Strickland,* 466 U.S. at 694.

[17]    In support of his position, Petitioner relies upon *McAllese v. Mazurkiewicz*, 1 F.3d 159, 166-67 (3d Cir. 1993). *See* ECF No. 34. However, in *McAllese,* our appellate court did not find ineffective assistance of counsel after a promise of an alibi defense to the jury was not fulfilled. The court found  that counsel made no promise to produce a specific witness's testimony, but used his opening as a recitation of evidence that would be and, in fact, was produced during the trial.  Additionally, the three cases Crespo cites where the courts found ineffective assistance of counsel are distinguishable and non-binding on this court.  For example, in *Ouber v. Guarino*, 293 F.3d 19 (1st Cir. 2002), the Court of Appeals for the First Circuit emphasized the unique circumstances presented in that case and concluded, "in the absence of unforeseeable events forcing a change in strategy, the sequence constituted an error in professional judgment." *Id*. at 27. In *Anderson v. Butler*, 858 F.2d 16 (1st Cir. 1988), the appellate court found counsel was ineffective because counsel did not abandon  his principal defense, but continued to assert his principal defense yet failed to present the necessary psychiatric testimony to support such defense.  And in *People v. Davis*, 677 N.E.2d 1340 (Ill. App. Ct. 1997), the state appellate court found that defendant received ineffective assistance of counsel when his counsel informed the jury that defendant would take the stand, although he had not investigated or obtained a ruling on the admissibility of defendant's prior conviction, and then drew attention to the defendant's failure to testify in his closing argument.

*d. Claim VI*

In his sixth and final claim for federal habeas relief, Crespo argues that his trial counsel was ineffective for failing to object to the trial court's "erroneous and prejudicial instruction on the complainant's failure to make a prompt complaint." Pet. at 74.

Pennsylvania law does not require a prompt complaint as an element of any sexual crime. 18 Pa.C.S. § 3105. Therefore, courts of this Commonwealth permit evidence of a victim's prompt complaint to be offered as substantive evidence for the prosecution, just as the defense is permitted to introduce evidence of a victim's lack of prompt complaint in order to cast doubt upon the accusation. The trial transcript in this case reflects that the victim's credibility served as the cornerstone of the defense. Defense counsel extensively cross examined the victim about her inability to pinpoint the dates of the incident and her failure to promptly report the incidents to the police. (Trial Tr. Day 1, at 124-27, 130.) The questioning was clearly aimed at attacking the victim's credibility.

The trial judge in his final charge to the jury gave the standard jury instructions on witness credibility, (Trial T., Day 2 at 196 – 97), and also gave the following "prompt reporting" instruction:

> Before you may find the defendant guilty of the crimes charged in this case you must be convinced beyond a reasonable doubt that the acts in fact occurred. The evidence of N.N.'s delay in making a complaint does not necessarily make her testimony unreliable but may remove from it the assurance of reliability accompanying the prompt complaint or outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the delay in making a complaint should be considered in evaluating her testimony and deciding whether the act occurred. <u>You must not consider her delay in making a complaint conclusive evidence that the act did not occur.</u> Her failure to complain promptly and the nature of the explanation are factors bearing on the believability of her testimony and must be considered by you in light of all the evidence in the case.

(Trial Tr. Day 2, at 200-01) (emphasis added). Crespo claims that the jury instruction "effectively relieved the Commonwealth from proving beyond a reasonable doubt that these sexual assaults even happened."

The Pennsylvania Supreme Court stated in *Commonwealth v. Lane,* 555 A.2d 1246, 1250-51 (Pa. 1989), "[t]he lack of a prompt complaint by a victim of a crime, <u>although not dispositive of the merits, may justifiably produce doubt as to whether the offense indeed occurred</u>, or whether it was a recent fabrication by the complaining witness." (emphasis added.) "The *Lane* Court recognized that a sexual assault victim's failure to make a prompt complaint *automatically* raises a credibility issue." *Commonwealth v. Dillon,* 863 A.2d 597, 603 (Pa. Super. 2004), *aff'd,* 592 A2d 131 (Pa. 2007).

It is the function of the jury to make credibility determinations. As such, the jury was free to consider <u>all</u> of the victim's testimony, including the delay in reporting when evaluating her credibility as a witness. The Court does not find that the "prompt complaint" instruction relieved the Commonwealth of its burden to prove guilt beyond a reasonable doubt. As the *Lane* court explained, "[u]nquestionably, a prompt complaint is <u>a factor which must be assessed with all the other pertinent evidence bearing upon the question of credibility</u> of the complaining witness." *Lane,* 555 A.2d at 1250 (emphasis added) (citing *Commonwealth v. Krick*, 7 A.2d 746 (Pa. 1949)).

For these reasons, the Court finds that this argument lacks merits and thus, Crespo, has failed to meet the requirements of *Martinez* and *Strickland* to overcome the procedural default. For these reasons, it is recommended that Claim VI be dismissed.

### D.     Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.  Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Haddock's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

### E.     Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be dismissed.  It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date

of service to respond to the objections. Failure to file Objections will waive the right to appeal.

*Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).


                          <u>s/ Cynthia Reed Eddy</u>
                          Cynthia Reed Eddy
                          United States Magistrate Judge

Dated:  December  12, 2016



cc:     Daniel Silverman
        Silverman & Associates, P.C.
        (via ECF electronic notification)

        William J. Higgins
        Bedford County District Attorney's Office
        (via ECF electronic notification)